FRED W. JONES, Judge.
The defendant Smart, charged with second degree murder, was tried by jury and found guilty of manslaughter. He was sentenced to imprisonment at hard labor for 15 years. The defendant has appealed his conviction and sentence, relying upon two assignments of error.
On May 30, 1984, defendant went to see his estranged wife (the decedent) who was living with another man, James Walker. The two were living at the residence of Walker’s aunt, Beth Miller. Three prosecution witnesses’ testimony was to this effect: About noon, defendant drove up to the Miller residence. The decedent left the house and she and the defendant spoke while the defendant remained in his truck. They were heard arguing and at one point the decedent went back into the house for cigarettes and a lighter. When she returned, defendant picked up a pistol from the seat next to him and pointed it at her. One of the witnesses then told Walker what was happening and Walker picked up his shotgun and went to the front door. He saw that defendant did indeed have a gun pointed at decedent’s head. Walker yelled at the defendant to leave the premises and stated that he (Walker) had a gun. It was then that defendant shot his wife in the chest. He fired two more shots in her direction, but did not strike her. He then shot three times at Walker who returned fire twice. Defendant fled in his truck, took an overdose of pills, and went to the Veterans Hospital where he was apprehended that afternoon.
Defendant’s version of the facts is different. He testified that during the morning hours of May 30th, his wife returned his calls and requested he come to the Miller residence so they could talk. Defendant stated he went there for the purpose of persuading her to return home. He was uneasy that Walker and several of his relatives would be there. Defendant said he did carry a gun in the truck and explained it was because he carried large sums of cash and worked at a carwash in a dangerous part of town. When defendant arrived, he talked to his wife for a while and when she announced she was going into the house for cigarettes, defendant offered her one of his. She refused, and on the way into the house defendant could see a package of cigarettes in her back pocket. When she returned, she told defendant he should leave because Walker was going to kill him. The defendant testified that his wife looked at the house, then back at him and then stepped away, “like she knew that somebody was fixing to come out and shoot at me.” At this point, Walker appeared at the door of the house with the shotgun and said, “I’m going to kill you, you better get out of here.” Defendant testified his first shot was at Walker, after Walker had fired on defendant. Because he only wanted to scare his wife and Walker, defendant stated he fired into the air. He thought that was how he had fired at his wife. “I didn’t really point it at her, I just pointed and as I was leaving I seen that I had hit her,” he said.

Assignment of Error No. 1

Defendant contends the trial judge erred when he refused to allow the defense counsel to question witnesses about the prior threats made by the victim against the defendant.
Evidence of the victim’s dangerous character or the making of threats against the accused is admissible in support of a plea of self-defense, provided the defendant *562 first produces evidence that the victim made a hostile demonstration or overt act against the defendant at the time of the incident. La.R.S. 15:482 provides as follows:
In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.
An overt act is any act of the victim which manifests in the mind of a reasonable person a present perception that they will suffer death or serious bodily injury at the hands of the victim. The overt act by the victim must have been made against the defendant at the time of the incident. State v. Cavalier, 421 So.2d 892 (La.1982). The credibility of the defense witness is not at issue. The trial court must accept as true the facts contained in the defendant’s evidence because to do otherwise would infringe on the fact-finding function of the jury. The issue for the trial court is whether or not the facts contained in the testimony of the defendant’s witnesses show appreciable evidence of a hostile demonstration or an overt act. State v. Edwards, 420 So.2d 663 (La.1982), and State v. Collins, 432 So.2d 369 (La. App. 1st Cir.1983).
As evidence of the victim’s hostile demonstration or overt act, the defendant presented the following: (1) Weeks before the shooting the victim had insisted defendant turn down a country road so they could talk. Defendant refused because he believed someone was waiting down that road to kill him. (2) Defendant was under grave apprehension about going to the Miller residence on the day of the shooting and had tried to convince the victim to meet him elsewhere. (3) The victim insisted on going back into the house for cigarettes even though he had offered her some and she had some in her back pocket. Finally, (4) defendant argues that when the victim returned with her cigarettes she warned defendant that Walker was going to shoot him and that he better leave. She then looked at the house, looked at the defendant and took a step back. Defendant maintains he shot in self-defense and, as an apparent alternate theory, that he inadvertently shot his wife, having intended only to scare her by firing into the air above her head.
The trial court found that the above actions and incidents were not hostile demonstrations nor overt acts on the part of the victim. Hence, the judge disallowed testimony regarding prior threats by the victim. The demonstration or act must be made at the time of the incident. Cavalier, supra. The country road incident is not contemporaneous with the shooting and cannot be considered. Defendant’s apprehension at going to the Miller residence is not an act by the victim. The fact that the victim went into the house for cigarettes when she already had some is not a hostile demonstration or act. Likewise, her alleged glances at the house and defendant and then her step back was not a hostile demonstration nor act.
On the basis of the defendant’s testimony, the victim was, if anything, trying to warn him of danger by saying Walker intended to shoot him and that the defendant should leave. Defendant testified he did not know if the victim was armed, but he said nothing of her having her hands behind her back or making any movement or gesture toward defendant which would give a reasonable person the basis to conclude that the victim intended to kill or do great bodily harm.
In Cavalier, the Louisiana Supreme Court declined to find the requisite hostile demonstration or overt act on the part of a victim who reached into the back of his waistband while walking toward the defendant. When the defendant drew and shot the victim the court upheld the conviction of second degree murder and ruled the action by the victim did not constitute the necessary overt act for admission of his prior threats against the defendant. Likewise, in State v. Jackson, 419 So.2d 425 (La.1982), the Supreme Court found there was a sufficient hostile/overt act by the victim when she continued to advance upon *563 defendant with her hands behind her back after receiving a warning shot and a second shot which struck her in the leg. Only then did the defendant, who was backed up against a parked car, fire the fatal shot.
Here, the trial court correctly determined that the defendant had not made a proper showing of a hostile demonstration or overt act on the victim’s part as required by La.R.S. 15:482 and the court correctly would not admit evidence of prior threats by the victim. This assignment of error is without merit.

Assignment of Error No. II

Defendant was charged with second degree murder and was found guilty of the lesser included offense of manslaughter. The maximum possible sentence is 21 years and defendant received 15 years. He argues that the sentence is both unreasonable as well as excessive and bases this argument on the assertion that the trial judge failed to consider the following: that defendant acted under strong provocation and the victim induced or facilitated the crime; that there were substantial grounds and extensive testimony tending to excuse or justify defendant’s criminal conduct; and finally, the judge did not give sufficient weight to the fact that defendant had no history of criminal activity and was a first felony offender.
An excessive sentence is prohibited under Louisiana Constitution, Article 1, Section 20. A sentence may be found to be excessive even if it is within the statutory limit. State v. Nealy, 450 So.2d 634 (La. 1984). A constitutionally excessive sentence is one that is grossly out of proportion to the severity of the crime, or which makes no measurable contribution to acceptable goals of punishment and thus is nothing more than the purposeless and needless imposition of pain and suffering. State v. Brogdon, 457 So.2d 616 (La.1984).
A trial judge is given wide discretion in the imposition of sentences within statutory limits. State v. Davis, 449 So.2d 452 (La.1984). Given compliance with La. C.Cr.P. Article 894.1, a sentence will not be set aside as excessive in the absence of a manifest abuse of the trial judge’s wide sentencing discretion. Nealy, supra.
The trial court’s reasons in imposing sentence are an important aid to this court in reviewing an allegedly excessive sentence. The record of sentencing should indicate that the trial court has considered not only the circumstances militating for incarceration, but also any mitigating factors. Davis, supra. While the trial judge need not articulate every aggravating and mitigating circumstance presented in La.C.Cr.P. Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. Davis, supra.
In this case, the pre-sentence investigation indicates a history of drug abuse and mental instability, as noted by the trial court in its reasons for sentencing. The court concluded that any lesser sentence would deprecate the seriousness of the offense. In the lower court’s opinion, there was a strong likelihood, due to defendant’s mental condition, that if the defendant received either a suspended sentence or was placed on probation, he would commit another serious offense. The lower court further noted the defendant had shown no remorse for his actions. The trial judge adequately complied with the sentencing guidelines of La.C.Cr.P. Art. 894.1. He did not abuse his discretion; the sentence is neither unreasonable nor excessive. This second assignment of error is also without merit.

Decree

For the reasons stated, defendant’s conviction and sentence are affirmed.