HALL, Chief Judge.
The defendant, Marshall Sutton, was charged by grand jury indictment for the January 2, 1983 manslaughter of Clotile Emerson, a/k/a Clotile Carter, in violation of LSA-R.S. 14:31. The defendant was found guilty as charged after a jury trial; however, this court reversed the defendant’s conviction and remanded the case for a new trial because the trial court had committed reversible error by allowing the prosecutor to use part of defendant’s statement given to a police officer the night of the shooting for the purpose of impeaching defendant’s trial testimony without requiring that the entire statement be introduced. See State v. Sutton, 460 So.2d 1087 (La. App. 2d Cir.1984). In the defendant’s second trial, another jury again found the defendant guilty as charged. The trial court sentenced the defendant to serve nine years at hard labor.
The defendant has appealed contending that there is insufficient evidence of the crime of manslaughter and that reversible error occurred when the assistant district attorney, in closing argument, referred to testimony which occurred in the defend *202 ant’s first trial but did not occur in the defendant’s second trial. Finding no merit to defendant’s assignments of error, we affirm.
FACTS
At approximately 9:00 on the evening of January 2, 1983, Eddie Ray Prudhomme and Clotile Carter were sitting in Prud-homme’s truck parked at the 501 Club in Winn Parish when the defendant arrived at the club, parked his car, and approached Clotile Carter on the passenger side of the truck. Upon the defendant’s request, Carter left the truck to speak with the defendant. Shortly thereafter, an argument ensued in which the defendant was angry because Carter had given out his private phone number. The defendant pulled a .357 magnum pistol from his car seat and began shooting towards Carter but according to Prudhomme, the defendant would always shoot “toward her but upward.” During the shooting spree Carter tried to hide behind cars in the parking lot. The defendant fired approximately three shots from the .357 magnum and then obtained another pistol in his car, a .25 caliber, and fired approximately one to three more shots. Carter was struck by a bullet on the right side of her hip when the last shot was fired. Carter called out to Prud-homme, “He’s done shot me now, Eddie Ray.” Prudhomme helped her to his truck and took her to the Winnfield General Hospital where she was pronounced dead on arrival.
The testimony is in conflict on whether the last shot which struck Carter occurred either before or during a struggle for the gun between the defendant and Lee “Super Cool” Williams. This conflict is the basis of defendant’s first assignment of error.
ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, the defendant contends that the jury erred in finding the defendant guilty of manslaughter, arguing that there was no proof of the commission of a felony or any intentional misdemeanor affecting the person. Defendant contends that at no point in the trial was the state able to prove an assault on the victim and that the testimony clearly shows that the victim was struck by a bullet from the gun fired during a scuffle for the gun between the defendant and Lee Williams. It is defendant’s position that any assault which had taken place on the victim had ceased and that the victim no longer considered herself to be in danger when the struggle for the gun occurred between the defendant and Williams. Thus, defendant contends the fatal shot was an accident.
The state contends that the jury could have found the defendant guilty beyond a reasonable doubt of manslaughter under either paragraph one of LSA-R.S. 14:31, a homicide which would be first or second degree murder but for the presence of heat of passion caused by provocation, or paragraph two, a homicide committed without intent to cause bodily harm but occurring while the offender committed an intentional misdemeanor directly affecting the person.
Eddie Ray Prudhomme testified that the defendant had been firing over Carter’s head when Lee “Super Cool” Williams exited the club and grabbed the defendant’s arm. Prudhomme testified that the last shot which struck Carter was fired while Williams was holding the defendant's arm.
Lee “Super Cool” Williams testified that he was told in the club that something was going on in the parking lot with the defendant. Williams exited the club, walked up to the defendant, grabbed his arm, and said, “Let me have the gun.” The defendant then handed Williams the gun. Williams testified that he did not hear any shots fired.
Billy Jones testified that as he was coming out of the club he saw the defendant and “Super Cool” tussling over the gun. Jones stated that he ducked and heard a shot from the pistol. He then heard Carter call out that she was shot. He then stood up and observed Carter lying down beside a truck.
It is well settled that due process requires that the record evidence, when viewed in the light most favorable to the *203 prosecution, must be sufficient for a rational fact finder to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Wright, 445 So.2d 1198 (La.1984); State v. Cook, 465 So.2d 825 (La.App. 2d Cir.1985).
Under LSA-R.S. 14:31 manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood would have actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
(2) A homicide committed without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in articles 30 or 30.1 or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means or in a manner not inherently dangerous, in the circumstances are such that the killing would not be murder under articles 30 or 10.1.
The record evidence reflects that a rational fact finder could conclude beyond a reasonable doubt that the defendant was guilty of the crime charged under paragraph two.
Under Paragraph 2(a) of LSA-R.S. 14:31, manslaughter is a homicide committed, without any intent to cause death or great bodily harm, when the offender is engaged in the perpetration of any intentional misdemeanor directly affecting the person. The evidence in the present case reflects that the homicide occurred during the commission of an intentional misdemeanor directly affecting the victim, Clotile Carter.
The evidence is clear that the defendant fired shots from two pistols at or near the defendant. Thus, the defendant was committing an aggravated assault upon the victim while armed with a dangerous weapon in violation of LSA-R.S. 14:37. Aggravated assault is an assault committed with a dangerous weapon and is an intentional misdemeanor. An assault is an attempt to commit a battery or the intentional placing of another in reasonable apprehension of receiving a battery. LSA-R.S. 14:36. The testimony clearly shows that the victim was placed in fear of her life from the shots fired in her direction by the defendant.
The fact that the fatal shot could have occurred during a struggle between the defendant and Williams does not provide the defendant with any relief. Specifically, the evidence reflects that the defendant was assaulting the victim and continued to assault the victim when the fatal shot was fired. We find no merit to defendant’s contention that the assault upon the victim had ceased when the struggle occurred. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
By this assignment the defendant contends that the assistant district attorney committed reversible error in his closing argument by erroneously quoting testimony which was not adduced at the defendant’s trial.
In closing argument, the assistant district attorney stated “If you remember he [referring to Prudhomme] said that every time there was a shot she ducked. And she told Marshall Sutton ‘Don’t shoot.’ ”
The record reflects that Prudhomme did not testify in the second trial that the victim told Sutton not to shoot. The defendant contends that this statement was prejudicial to the defendant and was improperly put before the jury.
An irregularity or error cannot be availed of after verdict unless it was object *204 ed to at the time of occurrence. LSA-C. Cr.P. Art. 841. The defendant made no objection to the district attorney’s remark either during closing argument or after closing argument. Therefore, the issue is not preserved for our review. State v. Carthan, 377 So.2d 308 (La.1979).
Additionally, although the assistant district attorney erroneously recounted the testimony of Prudhomme, the error could not have influenced the jury or contributed to the verdict. State v. Pierce, 422 So.2d 1157 (La.1982); State v. Sharp, 418 So.2d 1344 (La.1982). The evidence is clear that defendant was shooting in the direction of the defendant. Defendant does not contend otherwise, his contention being that the last, fatal shot was an accident. Whether or not the victim at some point said “Don’t shoot,” is inconsequential and is not inconsistent with the defendant’s defense.
This assignment of error is without merit.
DECREE
Finding no merit to defendant’s assignments of error, the defendant’s conviction and sentence are affirmed.
AFFIRMED.